UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **WENDY M. WEDDLE,** <br><br> **Plaintiff,** <br><br> v. <br><br> **NANCY A. BERRYHILL,** <br> **Acting Commissioner of Social Security,** <br><br> **Defendant.** | Case No. 16-2355 |

REPORT AND RECOMMENDATION

Plaintiff Wendy M. Weddle seeks review under 42 U.S.C. § 405(g) of the Social Security Administration's denial of her application for disability insurance benefits. The parties filed cross motions for summary judgment. For the reasons explained below, the Court recommends that Plaintiff's Motion for Summary Judgment **(#15)** be **DENIED**, Defendant's Motion for Summary Judgment **(#18)** be **GRANTED**, and the decision to deny benefits be affirmed.

**I.    Background**

On July 29, 2013, Plaintiff filed an application for disability insurance benefits, alleging disability beginning July 22, 2013. The Social Security Administration denied Plaintiff's claims initially and on reconsideration. Plaintiff appeared and testified at a video hearing before an Administrative Law Judge ("ALJ"). During the hearing, the ALJ heard testimony from Vocational Expert ("VE") Jacqueline Bethell.

On June 23, 2015, the ALJ issued an unfavorable decision. (R. 11-23.). The ALJ found that Plaintiff has the severe impairments of chronic pain attributed to various conditions including fibromyalgia, osteoarthritis, pseudogout, shoulder impingement; residuals of surgery on left hip, left thumb, and bilateral upper extremities for carpal tunnel and cubital tunnel release; and obesity. (R. 13.) The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically

equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). Additionally, the ALJ found that Plaintiff has the residual functional capacity (RFC) to:

> [L]ift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitation in the total amount of time she is able to sit, stand or walk throughout an 8 hour workday. The claimant needs to alternate her position between sitting, standing, and walking for no more than five minutes every half hour. While doing so, she would not need to be off task. The claimant can occasionally push and pull, and can never reach overhead or behind her. The claimant can occasionally climb ramps and stairs, and she can occasionally stoop, kneel, balance, crouch and crawl, but she can never climb ladders, ropes or scaffolds. She can perform fine and gross manipulation frequently, but cannot perform forceful grasping or torqueing. The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights or around exposed flames and unguarded large bodies of water, and she should avoid concentrated exposure to unguarded hazardous machinery. The claimant is further limited to simple, routine and repetitive tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. She can work at a normal production pace, but not an above average or highly variable pace.

(R. 14.) The ALJ found that Plaintiff is unable to perform her past relevant work as machine operator, but that jobs exist in significant numbers in the national economy that Plaintiff can perform. (R. 22.) The Appeals Council denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision.

II.   **Standard of Review**

In reviewing the ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court must affirm the decision to deny benefits if the ALJ correctly applied the law and supported the decision with substantial

evidence. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Stated differently, if reasonable minds could differ as to whether Plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996). Importantly, for the Court to evaluate the ALJ's analysis, the ALJ must build a "logical bridge from the evidence to his conclusion." *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

### III. Analysis

#### a. Plaintiff's Treating Physician

Dr. Lenardo was Plaintiff's longtime treating rheumatologist. He gave several opinions through the course of Plaintiff's treatment. The ALJ acknowledged that Dr. Lenardo was a longtime treating specialist, but chose not to give his opinions controlling weight. Plaintiff argues that this is an error requiring remand. While treating physicians are usually accorded controlling weight, here the ALJ supported his decision with substantial evidence.

The ALJ must give controlling weight to a treating source's opinion if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Punzio v. Astrue*, 630 F. 3d 704, 710 (7th Cir. 2011) (citing § 404.1527(c)). The Regulations give several factors the ALJ considers in evaluating a treating physician's opinion: the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion. 20 C.F.R. §§ 404.1527(c). "An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer 'good reasons' for declining to do so." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010).

Over the course of treatment, Dr. Lenardo offered several opinions, opining that Plaintiff was unable to work. In August 2013, Lenardo opined that "[t]he patient is currently unable to return to work and prognosis is poor. I do not anticipate any chance

of return to work and have recommended she seek permanent disability." (R. 399.) Dr. Lenardo severely limited Plaintiff's ability to sit or stand without changing positions, lifting weight, squatting, crouching, crawling, kneeling, or pushing and pulling. *Id*. In December 2013, Dr. Lenardo again proscribed several limitations, finding that Plaintiff could stand 30 minutes at a time, sit 30 minutes at a time, work 2 hours per day, lift 10 pounds occasionally, lift 5 pounds frequently, occasionally bend, never stoop, occasionally perform fine manipulation with either hand, frequent gross manipulation, and frequently raise both arms above shoulder level. (R. 309.) On April 10, 2014, Dr. Lenardo noted that Plaintiff remains disabled and was unable to work. (R. 312.)

The ALJ evaluated each of Dr. Lenardo's opinions and gave good reasons for discrediting his conclusions. Dr. Lenardo's August 2013 opinion stated that Plaintiff was unable to work. However, as the ALJ noted, Dr. Lenardo gave this opinion only one month after the alleged onset date and Plaintiff had not yet met the durational requirements. Additionally, Plaintiff underwent successful hip and carpal tunnel surgeries after this letter. Plaintiff's improvements after the surgeries were detailed in the record. For example, ten days after her left carpal tunnel release surgery, Plaintiff had normal strength, full movement, and sensation within normal limits. (R. 329.) A few weeks later, Plaintiff denied pain in her left arm, and reported only some pain, numbness and tingling in her right hand. (R. 385.) She also had a full range of movement in her left arm. *Id.* Two months after her right carpal tunnel release and three months after her left carpal tunnel release, medical records show that Plaintiff had "excellent results" from both surgeries. (R. 370.) At that appointment Plaintiff was "doing well and ha[d] no complaints." *Id.*

As to her hip surgery, Plaintiff reported no pain two weeks after her surgery in early 2014. (R. 367-68.) Seven months after the surgery, Plaintiff had normal gait and hip movement. (R. 359.) The ALJ reasonably discounted Dr. Lenardo's August 2013 opinion dated before these surgeries, as it was irrelevant to Plaintiff's ongoing disability in her arms and hip.

Dr. Lenardo's December 2013 opinion was made after her carpal tunnel surgeries, but before her hip surgery. As with his August 2013 opinion, Dr. Lenardo again listed severe limitations. The ALJ noted that this opinion too was given shortly after the alleged onset dates and did not meet the durational requirements. The ALJ further found that Dr. Lenardo's treatment notes did not contain findings supporting the limitations. Dr. Lenardo limited Plaintiff to standing/walking for ten minutes. But, as the ALJ notes, Plaintiff's October 2013 consultative exam revealed that Plaintiff could get on and off the exam table without difficulty, could walk more than 50 feet without support, had a non-antalgic gait without the use of an assistive device, had a normal ability to grasp and manipulate objects, had a full range of motion in the shoulders, elbows, wrists, hips, knees, ankles, and cervical and lumber spine. (R. 300.) These abilities do not conform to the severe limitations opined by Dr. Lenardo. *See McFadden v. Berryhill*, No. 17-1597 (7th Cir. Jan. 8, 2018) (finding that the treating physician's opinion "d[id] not substantiate its dire picture relative to the other doctors.")

Dr. Lenardo's April 10, 2014 opinion came after her carpal tunnel and hip surgeries. At this visit, Plaintiff reported "some occasional twinges of pain" in her hip but that it "overall was better." (R. 312.) Plaintiff also reported some elbow pain and remaining shoulder pain. *Id.* While Plaintiff self-reported pain at this visit, Dr. Lenardo's record does not contain findings supporting his conclusion that Plaintiff could not work. Importantly, the ALJ accommodated Plaintiff's limitations in her shoulder by limiting Plaintiff to never reaching overhead.

After the hearing, Plaintiff supplemented the record with another opinion from Dr. Lenardo dated in June 2015. Dr. Lenardo completed a form, limiting Plaintiff to two hours of work per day, with similarly severe limitations as his prior opinions. (R. 452-53.) The ALJ discounted this opinion for the same reasons discussed throughout this order.

The ALJ found that Dr. Lenardo's opinions were based largely upon Plaintiff's subjective allegations. (R. 19.) An ALJ may consider medical opinions based on a claimant's "own statements about his functional restrictions" to be "less significant." *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995) (upholding the ALJ's evaluation of the portion

5

of a physician's report concerning the plaintiff's limited ability to sit, stand, or walk when it appeared to be based upon the plaintiff's own statements about his functional restrictions at the time of the examination.)

Moreover, the ALJ's position was not without support. The state medical consultant opined that Plaintiff is capable of performing light exertional work with limitations. (R. 68-71.)

The ALJ acknowledged that "a different decision-maker, or someone reviewing this decision, might have weighed the evidence differently." It is not this court's role to re-weigh the evidence. *See Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989) (on review, the court does not try the case *de novo* or replace the ALJ's findings with the court's own assessment of the evidence). The ALJ spent substantial time evaluating Dr. Lenardo's opinion and applied the regulatory factors in 20 C.F.R. §§ 404.1527(c). The ALJ's evaluation of Dr. Lenardo's opinions was supported by substantial evidence.

### b. Residual Functional Capacity

Second, Plaintiff contends that the ALJ's RFC assessment was flawed. Plaintiff argues that once the ALJ found that Plaintiff was unable to perform any past relevant work, the burden of proof shifted to the Commissioner to show evidence that Plaintiff was not disabled. Plaintiff bears the burden of proof through step four of the disability evaluation. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). The Commissioner only bears the burden of proof if the evaluation proceeds to the fifth step. *Id.* The ALJ makes his RFC assessment between steps three and four. 20 C.F.R. § 404.1520(a)(4). Accordingly, when the ALJ made the RFC assessment, the burden was still on Plaintiff to prove her disability.

Plaintiff also maintains that the RFC is flawed because Plaintiff is unable to do the handling/fingering requirements or the sit/stand requirements. These alleged limitations are supported only by Dr. Lenardo's opinions. For the reasons provided above, the ALJ reasonably discounted Dr. Lenardo's opinions and relied on the remaining evidence in the medical record. The ALJ's RFC assessment was supported by substantial evidence.

### c. Vocational Expert Testimony

The ALJ heard testimony from VE Jacqueline Bethell at the hearing. Plaintiff submitted a Vocational Report completed by VE Bob Hammond. (R. 124-29.) Plaintiff argues that the ALJ erred in relying on Ms. Bethell's testimony over Mr. Hammond's Report. "The Commissioner typically uses a vocational expert ("VE") to assess whether there are a significant number of jobs in the national economy that the claimant can do." *Liskowitz v. Astrue*, 559 F.3d 736, 743. Where "the VE identifies a significant number of jobs the claimant is capable of performing and this testimony is uncontradicted (and is otherwise proper), it is not error for the ALJ to rely on the VE's testimony." *Id.*

Here, Plaintiff argues that Ms. Bethell's testimony was contradicted by Mr. Hammond's Report, and that the ALJ erred in failing to address the contradiction. The ALJ did not consider Mr. Hammond's findings in the decision. It is clear, however, that Mr. Hammond's findings relied heavily on Dr. Lenardo's opinions. Mr. Hammond's Report states that he reviewed Dr. Lenardo's physical ability assessment, and used that assessment to find Plaintiff's limitations. (R. 124.) As discussed above, the ALJ reasonably found Dr. Lenardo's opinions to be unreliable. Accordingly, any findings stemming from these opinions are also unreliable. The ALJ reasonably relied on Ms. Bethell's testimony as to the number of jobs existing in the national economy that Plaintiff could perform.

### d. Subjective Symptom Evaluation.

Finally, Plaintiff contends that the ALJ erroneously evaluated Plaintiff's subjective symptoms. Under SSR 16-3p, the ALJ "consider[s] all of an individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record." "The determination or decision must contain specific reasons for the weight given to the individual's symptoms." SSR 16-3p. SSR 16-3p clarifies that the ALJ's role is not to impeach the claimant's character, but that the ALJ should continue to assess the credibility of pain assertions by the claimant. *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

Plaintiff does not point to a specific portion of the ALJ's subjective symptom analysis as improper. Instead, Plaintiff makes the general argument that the hearing

7

testimony and medical evidence of record were consistent with Plaintiff's subjective complaints of pain. The ALJ considered Plaintiff's statements, the objective medical record, and Plaintiff's daily activities. (R. 16-18.) Specifically, the ALJ considered Plaintiff's function forms, hearing testimony, diagnostic test, and medical treatment. The ALJ assessed the credibility of Plaintiff's pain assertions as directed by SSR 16-3p. The ALJ correctly focused on the regulatory factors, rather than Plaintiff's perceived truthfulness, in evaluating Plaintiff's subjective symptoms.

## IV. Conclusion

For these reasons, the Court recommends that Plaintiff's Motion for Summary Judgment **(#15)** be **DENIED**, Defendant's Motion for Summary Judgment **(#18)** be **GRANTED**, and that the decision to deny benefits be affirmed. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).


ENTERED this 23rd day of February, 2018.

s/ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE
